AES:HDM
F. #2017R02216

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

    - against -

MICHAEL STARKWEATHER,

              Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

**To Be Filed Under Seal**

COMPLAINT AND AFFIDAVIT IN
SUPPORT OF APPLICATION FOR
AN ARREST WARRANT

(T. 15, U.S.C., §§ 78j(b) and 78ff;
T. 18, U.S.C., § 2)

EASTERN DISTRICT OF NEW YORK, SS:

        KURT DENGLER, being duly sworn, deposes and states that he is a Special Agent with the Federal Bureau of Investigation ("FBI"), duly appointed according to law and acting as such.

        Upon information and belief, in or about and between November 2017 and March 2019, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant MICHAEL STARKWEATHER, together with others, did knowingly and willfully use and employ one or more manipulative and deceptive devices and contrivances, contrary to Rule 10b-5 of the Rules and Regulations of the United States Securities and Exchange Commission, Title 17, Code of Federal Regulations, Section 240.10b-5, by: (a) employing one or more devices, schemes and artifices to defraud; (b) making one or more untrue statements of material fact and omitting to state one or more material facts necessary in order to make the statements made, in the light of the circumstances in which they were made, not misleading; and (c) engaging in one or more

acts, practices and courses of business which would and did operate as a fraud and deceit upon one or more investors and potential investors in the Andiamo Corporation, in connection with the purchase and sale of investments in the Andiamo Corporation, directly and indirectly, by use of means and instrumentalities of interstate commerce and the mails.

(Title 15, United States Code, Sections 78j(b) and 78ff; Title 18, United States Code, Sections 2 and 3551 et seq.)

The source of your deponent's information and the grounds for his belief are as follows:

1. I have been a Special Agent with the FBI for approximately 19 years. I am currently assigned to an FBI squad that investigates securities fraud, wire fraud and other financial crimes. During my tenure with the FBI, I have participated in numerous financial fraud investigations and have participated in all aspects of investigations, including conducting surveillance, executing search warrants, debriefing defendants and informants, interviewing witnesses, reviewing and analyzing recorded conversations and analyzing telephone toll information.

2. I have personally participated in the investigation of securities fraud, among other potential claims, by the defendant MICHAEL STARKWEATHER, among others, as discussed below. I am familiar with the facts and circumstances of this investigation from, among other things: (a) my personal participation in this investigation, (b) discussions with other law enforcement agents involved in this investigation, and (c) my

review of consensual recordings, e-mails and text messages, among other sources of evidence.

3. Except as explicitly set forth below, I have not distinguished in this affidavit between facts of which I have personal knowledge and facts of which I learned from other law enforcement agents. Because this affidavit is being submitted for the limited purpose of establishing probable cause to arrest the defendant, I have not set forth each and every fact learned during the course of this investigation. Instead, I have set forth only those facts that I believe are necessary to establish probable cause for the arrest warrant sought herein. In addition, where the contents of documents, or the actions, statements and conversations of others are reported herein, they are reported in sum and substance and in part, except where otherwise indicated.

I. The Defendant, the Publicly-Traded Company and Co-Conspirators

4. The defendant MICHAEL STARKWEATHER was a United States citizen who resided in North Ridgeville, Ohio. In or about and between November 2017 and September 2018, STARKWEATHER was Chief Executive Officer ("CEO") of the Andiamo Corporation.

5. The Andiamo Corporation was a microcap or penny stock company whose shares traded publicly on the over-the-counter exchange under the ticker symbol ANDI ("ANDI"). In public statements that it issued at various times, ANDI purported to be involved in various businesses, as described in part below:

(a) In or about and between April 2016 and September 2016, ANDI purportedly entered into a joint venture with Peppermint Jim, a company in the business of marketing pure mint and essential oils, to help Peppermint Jim expand its business.

(b) In or about and between November 2016 and March 2017, ANDI purported to enter into the energy sector, whereby ANDI would create an on-demand hydrogen-producing unit designed to increase performance, reduce emissions and lower the cost of operations for vehicles.

(c) In or about and between November 2017 and June 2018, ANDI, through a merger with Utopya Innovations, Inc., purportedly began to develop a smartphone cellular device.

6. Cooperating Witness #1 ("CW #1") was a stock promoter. In May 2016, CW #1 pled guilty to conspiracy to commit securities fraud, in violation of Title 18, United States Code, Section 1349, pursuant to a cooperation agreement with the government.[1]

7. Co-Conspirator #1 ("CC #1") was a former ANDI executive. Subsequent to the events described in this complaint, Co-Conspirator #1 pled guilty to conspiracy to commit securities fraud, in violation of Title 18, United States Code, Section 371, pursuant to a cooperation agreement with the government.[2]

---

[1] CW #1 has been found to be reliable and is corroborated by other evidence, including audio recordings.

[2] CC #1 has been found to be reliable and is corroborated by other evidence, including audio recordings.

4

II.     Relevant Regulatory Principles and Definitions[3]

        8.    "Microcap" or "penny" stocks refer to stocks of publicly-traded U.S. companies that have a low market capitalization. Microcap stocks are often subject to price manipulation because they are thinly traded and subject to less regulatory scrutiny than stocks that trade on notable exchanges. Additionally, large blocks of microcap stock are often controlled by a small group of individuals, which enable those in the group to control or orchestrate manipulative trading in those stocks.

        9.    "Match trades" are purchases and sales of securities that match each other in price, volume and time of execution and involve a related third person or party who places one side of the trade. For example, a match trade takes place when Investor A buys 100 shares at $5.00 per share of Company A through a broker, while Investor B, who coordinated with Investor A, simultaneously sells 100 shares at $5.00 per share of Company A through a broker. Match trades are used to create the appearance that the stock price and/or volume rose as a result of genuine market demand for the securities.

III.    The Fraudulent Scheme

        10.   In or about and between approximately November 2017 and March 2019, the defendant MICHAEL STARKWEATHER, together with others, defrauded investors and potential investors in ANDI by artificially controlling the price and trading volume of shares in ANDI. In furtherance of the scheme, STARKWEATHER (1) issued several false and misleading press releases to generate interest in ANDI and increase ANDI's

---

[3] The information set forth in this section is based on my training and experience.

stock price and trading volume; and (2) received kickbacks from the purported sales of ANDI stock at artificially inflated prices.

   A. <u>The Defendant Michael Starkweather Issued Several False and Misleading Press Releases</u>

   11. In or about November 2017, the defendant MICHAEL STARKWEATHER became CEO of ANDI. Shortly thereafter, on or about December 14, 2017, ANDI issued a press release entitled "Visionary Smartphone Company Utopya Innovations Inc. Announces Plans to Take the World by Storm." The press release stated that Utopya "was involved in a reverse acquisition" of ANDI and that Utopya was planning to launch a smartphone. The press release quoted STARKWEATHER, who confirmed the reverse acquisition. The press release further described STARKWEATHER as ANDI's president, listed him as the only contact person for the company and provided his phone number and email address.

   12. On or about December 20, 2017, ANDI issued a press release entitled "ANDI/Utopya Question and Answer," which discussed Utopya's alleged smartphone. The press release stated that "we expect the phone to be available for purchase through retail channels in mid-late 2018; the first units are currently being tested/vetted." The press release also quoted the defendant MICHAEL STARKWEATHER, who stated "The future is bright and we're thrilled to be able to include shareholders on our journey." The press release listed STARKWEATHER as a contact for ANDI and provided his email address.

13. On or about January 15, 2018, ANDI issued a press release entitled "Canadian Smartphone Company Utopya Innovations Inc. Announces Strategic Partnership with Global IT Consulting Firm Cycloides Inc.," which discussed Utopya's alleged smartphone. The press release stated that Utopya "has been busy making a name for itself recently, as members of its executive team attended the Consumer Electronics Show (CES) in Las Vegas, Nevada last week. The team reportedly spent much of the week in meetings…but did make it clear to investors that at least one major announcement is expected in the coming weeks." The press release also referred to the defendant MICHAEL STARKWEATHER as Utopya's CEO. The only contact provided for either Utopya or ANDI in the press release was STARKWEATHER.

14. On April 6, 2018, ANDI issued a press release about the alleged smartphone on OTC Markets' website page for ANDI. The press release was entitled "Utopya Innovations, Inc., a Wholly-Owned Subsidiary of Andiamo Corp. (OTCPK: ANDI), Announces Date of Product Unveiling." The press release further stated that Utopya "plans to unveil the first smartphone in its lineup of devices ('Products') after-hours on Tuesday, April 10, 2018."

15. On or about April 10, 2018, ANDI issued a press release entitled "Utopya Innovations Inc., through Andiamo Corp. (OTCPK: ANDI), Unveils its First Smartphone Device." The press release stated: "Utopya Innovations Inc. ('Company'), through Andiamo Corp. (OTCPK: ANDI), proudly announces the unveiling of its first smartphone device today, the Utopya Odyssey ('Smartphone' or 'Device')." The press

7

release provided a detailed description of the alleged smartphone: "The Utopya Odyssey is the first smartphone to be unveiled in the Company's product lineup. This 4G smartphone features an incredible 4950 mAh battery, a beautiful 6 FHD 18:9 display, dual SIM card functionality, up to 192 GB storage capacity, a 16 MP rear camera and 16 MP front camera, and 4 GB of RAM. The Android-based Device also comes equipped with facial unlock technology and a fingerprint sensor for added user security." The press release also stated that the smartphone was available for distribution: "The Utopya Odyssey is now available solely to the Company's distribution partners around the world."

16. ANDI's price and trading volume increased the next trading day following the issuance of each of the above-described press releases.

17. In or about June 2018, STARKWEATHER met with CC #1 in Ohio to discuss the smartphone and STARKWEATHER told CC #1 that there was currently no smartphone.

18. In approximately November 2018, after the defendant MICHAEL STARKWEATHER stepped down as CEO of ANDI, CC #1 became CEO of ANDI. At that time, CC #1 confirmed that no Utopya or Andiamo smartphone existed.

19. On February 28, 2019, the defendant MICHAEL STARKWEATHER met with CC #1. The meeting was consensually recorded by CC #1. During this meeting, CC #1 told STARKWEATHER, "There is no phone—there is no physical phones [sic] that I can sell right now." STARKWEATHER replied: "There

never was.  What there was the ability for you to place an order for them [Utopya] to be the middleman.  It always was a middleman scenario with software, but the software never got built.  We paid Cycloids [the software company] and they never did anything. They never built anything…. They never built anything for us."  During that same conversation, CC #1 stated, "I need a real phone that can be sold."  STARKWEATHER replied: "You're not going to get one because it doesn't exist until somebody puts in an order…. You have to put in an order before a real phone exists…. [T]hey [Utopya] have no money to pay for them to do the chip change over there, for the radio. They don't have the money to pay for the radio…."

      B.    <u>The Defendant MICHAEL STARKWEATHER received kickbacks from the purported sales of ANDI stock at artificially inflated prices</u>

      20.    On or about January 18, 2018, the defendant MICHAEL STARWEATHER met with CW #1.  The meeting had been arranged by CC #1, and was consensually recorded by CW #1.  During the meeting, CW #1 stated that he wanted to convert his ANDI notes into ANDI shares of common stock, and that STARKWEATHER needed to approve the conversion.  STARKWEATHER told CW #1 that if he sold such shares "profitably," STARKWEATHER wanted "some sort of kickback" in return. STARKWEATHER later added that he wanted 50% of CW #1's profits and that STARKWEATHER could then "keep this thing [ANDI's stock price] moving or at least hovering where it is now."

      21.    On or about February 15, 2018, the defendant MICHAEL STARKWEATHER met with CW #1 and CC #1.  The meeting was consensually

9

recorded by CW #1. During this meeting, CW #1 gave both STARKWEATHER and CC #1 a check for $5,500 each, which purportedly represented the sales of proceeds of ANDI stock by CW #1. During this meeting, STARKWEATHER stated, "Rock it out now. We're going to be pumping out the news soon." STARKWEATHER subsequently deposited the check, which had been drawn on a bank account in Queens, New York.

22. On or about March 12, 2018, the defendant MICHAEL STARKWEATHER met with CW #1. During the meeting, CW #1 gave STARKWEATHER two checks for $5,200 each (for a total of $11,400), which purportedly represented sales of ANDI stock by CW #1 and the "kickback" due to STARKWEATHER and CC #1. However, STARKWEATHER did not give CC #1 his check. Instead, STARKWEATHER wrote both checks out to his wife, and subsequently deposited both checks into a bank account that he controlled. The checks were both drawn on a bank account in Queens, New York.

IV.   Conclusion

WHEREFORE, your affiant respectfully requests that an arrest warrant be issued for the defendant MICHAEL STARKWEATHER so that he may be dealt with according to law.

Because public filing of this document could result in a risk of flight by the defendant MICHAEL STARKWEATHER, as well as jeopardize the government's ongoing

IV. Conclusion

WHEREFORE, your affiant respectfully requests that an arrest warrant be issued for the defendant MICHAEL STARKWEATHER so that he may be dealt with according to law.

Because public filing of this document could result in a risk of flight by the defendant MICHAEL STARKWEATHER, as well as jeopardize the government's ongoing investigation, your deponent respectfully requests that this complaint, as well as the arrest warrant issued in connection with this complaint, be filed under seal.

Dated: Brooklyn, New York
October 8, 2019

KURT DENGLER
Special Agent, FBI

Sworn to before me this
8 th day of October, 2019 **by telephone**

THE HONORABLE PEGGY KUO
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK